IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA DEBAR,<br>                 **Plaintiff,**<br><br>       v.<br><br>FIRSTENERGY CORP., et al.,<br>                 **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  24CV5164 |

### MEMORANDUM OPINION

Plaintiff Lisa Debar's son, Cody Hatt, was working on a demolition project at the Hatfield's Ferry Power Station (the "Power Station"), a coal plant in Pennsylvania, when he fell more than forty feet from one metal catwalk to another, suffering fatal injuries.  Debar, individually and as personal representative of her son's estate, sued in the Philadelphia Court of Common Pleas various business organizations[1] involved in the demolition project for negligence, wrongful death, *see* 42 Pa. Cons. Stat. § 8301, and a survival action, *see id.* § 8302.  The case was removed to federal court, and one Defendant, FirstEnergy Service Company ("FESC"), now moves to dismiss Debar's Amended Complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.    FACTUAL BACKGROUND[2]

Fifty years after the Power Station began operations in 1963, in response to growing

---

[1] Debar sued the following Defendants: FirstEnergy Corp., FirstEnergy Pennsylvania Electric Company, FirstEnergy Service Company, FirstEnergy Generation LLC, and FirstEnergy Solutions Corp (together, the "FirstEnergy Defendants"); Allegheny Energy, Allegheny Energy, Inc., Allegheny Energy Supply Co., LLC, Allegheny Energy Supply, and Allegheny Energy Supply Company, LLC (together, the "Allegheny Energy Defendants"); Energy Harbor Nuclear Corp. and Energy Harbor Nuclear Generation LLC (together, the "Energy Harbor Defendants").  She also added in placeholder defendants, ABC Corporation 1 and ABC Corporation 2.

[2] Unless otherwise noted, the following facts are taken from Debar's Amended Complaint, well-pleaded allegations from which are taken as true at this stage.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

pressure from the Environmental Protection Agency, the First Energy Defendants decided to shut it down, demolish the smokestacks on its grounds, and redevelop the area.

FESC entered into a contract with North American Dismantling ("NAD"), Hatt's employer, to perform some of the demolition work.  Of relevance to the discussion here are the following provisions of that contract:

> [NAD] shall be considered an independent contractor in its performance hereunder and responsible for all acts and omissions (negligent or otherwise) of its agents, employees and subcontractors.  [NAD] alone shall be liable and responsible for the manner and methods by which the Work is performed and for materials, work force and equipment supplied in connection therewith, irrespective of whether or not any changes are made as a result of any comments received from Purchase.  [sic]  Nothing in the Agreement or in the performance of the Work shall be construed to create a partnership, joint venture or other joint business arrangement between Purchaser and [NAD]…
>
> . . . .
>
> [C]onduct the Work in a manner to avoid risk of bodily harm to persons or damage to property.  [NAD] shall take all necessary safety health precautions, and shall do everything necessary to prevent accidents or injury to persons on, about, or adjacent to the premises where Work is being performed, including using proper safety appliances….  [NAD] shall not require any employee or Subcontract performing hereunder to work in surroundings or under working conditions that are unsanitary, hazardous, or dangerous to safety or health…  [NAD] shall conduct the Work in a conformance with all applicable safety and health laws, ordinances, rules, regulations, orders and all other requirements (including, without limitation, standards under OSHA and Purchaser's safety requirements) when at Purchaser's Site….

The contract also required NAD to employ "an adequate administrative and supervisory force [and] a sufficient complement of properly skilled workmen" to demolish the power station. Finally, the contract dictates that FESC would assign a representative to the site, to be responsible for ensuring that the demolition met FESC's safety standards.

2

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Documents "integral to or explicitly relied upon in the complaint" may also be considered without converting a motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted and emphasis removed).

FESC attached the contract to its Motion to Dismiss. Debar argues that the Court should not take the contract into consideration in deciding the Motion, or, if it does, the Motion must be converted into a motion for summary judgment. Here, however, the Amended Complaint explicitly references to the contract in that it alleges that Hatt was at the Power Station pursuant

to an agreement entered into by his employer, NAD, to perform demolition work. Accordingly, it is appropriately considered in deciding the Motion. *Id.*

### III. DISCUSSION

As a preliminary matter, wrongful death claims and survival actions are not "substantive cause[s] of action." *Corbin v. Bucks Cnty.*, 703 F. Supp.3d 527, 540 (E.D. Pa. 2023) (quoting *Johnson v. City of Phila.*, 105 F.Supp.3d 474, 483 (E.D. Pa. 2015)). Rather, they "provide the 'vehicle through which plaintiffs can recover for . . . conduct that results in death.'" *See id.* (quoting *Johnson*, 105 F.Supp.3d at 483). So, for the purposes of analyzing FESC's Motion to Dismiss, Debar's Amended Complaint rises and falls on her negligence claim.

#### A. Duty as Landowner

To state a claim for negligence under Pennsylvania law, a plaintiff must establish that the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *Morena v. South Hills Health System*, 462 A.2d 680, 684 (Pa. 1983). Only "certain relations between parties may give rise to such a duty." *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa. 1989). "Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Id.*

One such relationship that may give rise to such a duty is that between landowners, possessors of land, or property owners—terms which are used interchangeably by Pennsylvania courts, *see, e.g*, *Farabaugh v. Pennsylvania Turnpike Comm'n*, 911 A.2d 1264, 1270-74 (Pa.

4

2006)—and those who enter their land or property, *see id.* The duty that a landowner owes an entrant depends on the purpose for which the individual enters the landowner's property. *Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546, 552 (Pa. 1978). Those who enter "for a purpose directly or indirectly connected with business dealings" are considered "business invitees." *Gutteridge v. A.P. Green Servs., Inc.*, 804 A.2d 643, 655-56 (Pa. Super. 2002).

"The duty of care" that a landowner owes "to a business invitee . . . is the highest duty owed to any entrant upon land." *Id.* at 656 (quoting *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. 1998)). "The landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care." *Id.* (quoting *Emge*, 712 A.2d at 317). A "possessor of land must use 'reasonable care to make the premises safe or give adequate and timely warnings of dangers known to him but not known to the contractor or his employees.'" *Farabaugh*, 911 A.2d at 1273 (quoting *Crane v. I.T.E. Cir. Breaker Co.*, 278 A.2d 362, 364 (Pa. 1971)).

Debar alleges in her Amended Complaint that FESC owned the Power Station, that Hatt was a business invitee, and that FESC therefore owed and breached its duty to either remedy any dangers at the Power Station or to warn Hatt of such a danger. But in her Response to FESC's Motion to Dismiss, she states that "Allegheny Energy Supply Company, LLC . . . was the sole owner of the . . . Power Station," thereby admitting that FESC did not own it. Further, Debar unequivocally concedes the legal point that "the duty to warn business invitees falls on Allegheny Energy Supply Company, LLC," not FESC. Because of those admissions, any claim predicated on FESC's ownership of the Power Station must fail. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006) (holding that concessions in pleadings or briefs bind the party who makes them).

In her Amended Complaint and in her Response to FESC's Motion, Debar does not identify any other relationship that FESC might have had with Hatt such that it would have owed him a duty directly. Therefore, she has not plausibly stated a claim of direct negligence against FESC.

### B. The Independent-Contractor Rule

FESC argues that it could not have a duty to Hatt because his employer was an independent contractor as specifically provided in the contract ("[NAD] shall be considered an independent contractor in its performance hereunder").[3] And, indeed, it is "century-old" "foundational law" that "a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees." *Nertavich v. PPL Elec. Utilities*, 100 A.3d 221, 227 (Pa. Super. 2014) (citing *Beil v. Telesis Const., Inc.*, 11 A.3d 456, 466 (Pa. 2011).

But, counters Debar, the independent-contractor rule "is subject to a number of exceptions[,]" *Beil*, 11 A.3d at 466, one of which, the "retained control exception," applies here.[4] The exception provides that "'[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his

---

[3] Debar argues that FESC cannot invoke the independent-contractor rule to avoid liability because the rule is only available to landowner-defendants in the context of premises liability, and FESC did not own the Power Station. But she does not provide persuasive citations in support of this position. While the cases FESC principally relies on do concern landowner-defendants, case law amply illustrates that the rule is not limited to only those types of defendants. By way of example only, Pennsylvania courts routinely apply the independent-contractor rule to the general contractor-subcontractor relationship. *See, e.g., Leonard v. Commonwealth*, 771 A.2d 1238, 1241 (Pa. 2001). And the rule is frequently applied outside the context of premises liability altogether. *See, e.g., Capan v. Divine Providence Hosp.*, 430 A.2d 647, 648 (Pa. Super. 1980) (medical malpractice); *George v. Nemeth*, 233 A.2d 231, 233-34 (Pa. 1967) (negligent operation of automobile).

[4] The retained control exception, which Pennsylvania courts construe narrowly, *id.* at 291, is found in Section 414 of the Restatement, "which has been adopted in Pennsylvania." *Id.* at 289.

failure to exercise his control with reasonable care.'" *Id.* (quoting Restatement (Second) of Torts § 414).

A plaintiff demonstrates that a defendant "retained control" of an independent contractor's actions, if they either "point to contractual provisions giving the" employer "control over the manner, method, and operative details of the work" or "demonstrate that the" employer "exercised actual control over the work." *Id.* at 467.

Debar draws on two provisions of the contract to argue that FESC retained control over NAD's actions on the jobsite. First, she points to FESC's commitment to a safe workplace, and the contract's requirement that all of NAD's work conform to FESC's safety standards. Second, she highlights that FESC assigned a Purchaser Representative to the site, who was responsible for ensuring that the demolition was conducted in accordance with the contract, and for continually monitoring the demolition's safety.

But "retaining a certain degree of authority over safety issues, such as supervising and enforcing safety requirements, and even imposing its own safety requirements at a work site, does not constitute control for purposes of imposing liability." *Id.* at 469. That is so because the "public policy of encouraging attention to safety matters and ensuring workplace safety" would be undermined if "such safety-related conduct . . . constitute[d] control" resulting in liability for the employer. *Id.* at 468.

In the alternative, Debar argues that the second method of establishing control—that FESC "exercised actual control over the work," *id.* at 467—is too fact-intensive to be determined at the motion to dismiss stage, when a court must accept all her factual allegations as true. On that front, Pennsylvania law does provide Debar some support: "As a general proposition, the question of the quantum of retained control necessary to make the owner of the premises liable is

7

a question for the jury." *Id.*

However, when, as here, a "complaint does not allege any facts to suggest how" an employer "retained control" over the independent contractor, the complaint fails to state a claim. *Fedor v. Van Note-Harvey Assocs.*, 2011 WL 1085993 at *3-4 (E.D. Pa. Mar. 18, 2011). Debar pleads only that FESC hired NAD, and that FESC knew or should have known of the risks of the demolition project yet declined to remedy those risks. She does not, however plead any factual matter which "accepted as true" plausibly alleges that FESC retained actual control over the demolition project. *Iqbal*, 556 U.S. at 678.

### IV.   CONCLUSION

Because Debar has not pleaded sufficient facts to plausibly allege that FESC owed Hatt a duty, FESC's Motion will be granted, and her Amended Complaint will be dismissed without prejudice. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (Federal Rules require that "leave [to amend] shall be freely given when justice so requires") (citing Fed. R. Civ. P. 15(a)).

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**