IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA DEBAR,<br>              **Plaintiff,**<br><br>v.<br><br>FIRSTENERGY CORP., et al.,<br>              **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  24-5164 |

**MEMORANDUM OPINION**

Plaintiff Lisa Debar's son, Cody Hatt, died while working on a demolition project at the Hatfield's Ferry Power Station (the "Power Station"), a coal plant in Pennsylvania. Debar, individually and as personal representative of her son's estate, sued various business organizations involved in the demolition project for negligence, wrongful death, *see* 42 Pa. Cons. Stat. § 8301, and a survival action, *see id.* § 8302. Defendants—FirstEnergy Service Company ("FESC"), FirstEnergy Corp. ("FEC," and along with FESC, the "FirstEnergy Defendants"), and Allegheny Energy Supply Company, LLC ("AESC")—have moved to dismiss Debar's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.  **BACKGROUND**

Unless otherwise noted, the following facts are taken from Debar's Second Amended Complaint, well-pleaded allegations from which are taken as true at this stage.[1] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In addition to those allegations, the court may consider "exhibits attached to the complaint and matters of public record."[2] *Pension*

---

[1] The Court writes primarily for the benefit of the parties and assumes familiarity with the facts pertaining to the underlying dispute, which are set forth in its prior opinion evaluating FESC's Motion to dismiss. *See Debar v. FirstEnergy Corp.*, 2024 WL 5008504 (E.D. Pa. Dec. 6, 2024).

[2] Debar attaches to her Second Amended Complaint the Purchase Order FESC used to hire Hatt's employer, North

*Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993).

Fifty years after the Power Station began operations in 1963, and in response to growing pressure from the Environmental Protection Agency, AESC—the Power Station's owner—and the FirstEnergy Defendants decided to shut it down, demolish the smokestacks on its grounds, and redevelop the area. FESC, a subsidiary of FEC, provided a purchase order (the "Purchase Order") to North American Dismantling Corp. ("NADC")—Hatt's employer—to complete the demolition project.[3] Hatt was working on a catwalk suspended one hundred feet in the air, when he fell more than forty feet, from one catwalk to another, and suffered fatal injuries.

In addition to the Purchase Order, FESC also drafted several documents setting forth quality and safety standards: a "Code of Conduct," a "Generation Specification of the Hatfield

---

American Dismantling Corp. Because that document is an "exhibit[] attached to the complaint," it may be considered on a Motion to Dismiss. *Pension Ben. Guar. Corp.*, 998 F.2d at 1996.

Plaintiff also mentions—but does not attach—three documents in her Second Amended Complaint: the "Generation Specification of the Hatfield Power Plant," the "FE Generation Personal Safety Manual," and a "Code of Conduct," all purportedly drafted by FESC.

Defendant FESC attaches to its Motions to Dismiss, the "FirstEnergy Generation, LLC Specification FLT-SPEC-XX-XXXX for Demolition of Hatfield Power Plant." Although the name of that document is similar to the "Generation Specification of the Hatfield Power Plant" referenced in Debar's Second Amended Complaint it is not identical and, thus, it is not clear whether the parties are referring to the same document. Accordingly, that document will not be considered on the Motion to Dismiss.

Neither will three other documents that FESC attaches to its brief: the "NADC Preliminary Work Plan for: FirstEnergy – Demolition; Hatfield Power Plant – Masontown, PA," the "Environmental, Health, Safety and Security Plan and Manual," and the "NADC Safety Program." None of these documents clearly correlate to any of the documents referenced in Debar's Second Amended Complaint.

Defendants, nevertheless, urge the Court to consider said documents in evaluating their Motions to Dismiss. But the case they cite in support of that argument, *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994), *abrogated on other grounds in D.J.S.-W. by Stewart v. United States*, 962 F.3d 745 (3d Cir. 2020), does not support that argument. What it says is that in evaluating a motion to dismiss a court may consider "matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case" at the pleading stage. *Id.* at 1384 n.2. Here, the documents that Defendants urge the Court to rely on are neither "matters of public record, orders, exhibits attached to the complaint," nor are they "items appearing" properly "in the record of the case." *Id.*

[3] Throughout their briefing, the parties sometimes refer to the Purchase Order as a purchase order and sometimes as a contract. It will be referred to here with the title it bears—"Purchase Order".

2

Power Plant" (the "Specifications"), and a "FE Generation Personal Safety Manual" (the "Safety Manual"). The Specifications "[d]etail[] specifications for how the demolition work was to be performed." The Safety Manual, for its part, sets out safety requirements for NADC's work.

To oversee the demolition work, FESC agreed to employ a Purchaser Representative whose job was to ensure strict compliance with the Specifications, the Safety Manual, and the Code of Conduct. Specifically, the Purchase Order provided that the Purchaser Representative was "responsible for . . . field construction work and continuous monitoring of project safety," and for conducting safety audits based on the instructions set out in the Specifications, Safety Manual, and Code of Conduct. FESC also employed a Project Manager, who was required "to oversee . . . and require strict compliance with and enforce the terms of" Specifications, Safety Manual, and Code of Conduct.

As for NADC, the Purchase Order provides that it:

> shall be considered an independent contractor in its performance hereunder and responsible for all acts and omissions (negligent or otherwise) of its agents, employees and subcontractors. [NADC] alone shall be liable and responsible for the manner and methods by which the Work is performed and for materials, work force and equipment supplied in connection therewith, irrespective of whether or not any changes are made as a result of any comments received from Purchase. [sic] Nothing in the Agreement or in the performance of the Work shall be construed to create a partnership, joint venture or other joint business arrangement between Purchaser and [NADC]…
>
> . . . .
>
> [NADC shall] conduct the Work in a manner to avoid risk of bodily harm to persons or damage to property. [NADC] shall take all necessary safety health precautions, and shall do everything necessary to prevent accidents or injury to persons on, about, or adjacent to the premises where Work is being performed, including using proper safety appliances…. [NADC] shall not require any employee or Subcontract performing hereunder to work in surroundings or under working conditions that are unsanitary,

3

> hazardous, or dangerous to safety or health…. [NADC] shall conduct the Work in a conformance with all applicable safety and health laws, ordinances, rules, regulations, orders and all other requirements (including, without limitation, standards under OSHA and Purchaser's safety requirements) when at Purchaser's Site….

The Purchase Order also required NADC to employ "an adequate administrative and supervisory force [and] a sufficient complement of properly skilled workmen" to demolish the Power Station.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

## III. DISCUSSION

As a preliminary matter, wrongful death claims and survival actions are not "substantive cause[s] of action." *Corbin v. Bucks Cnty.*, 703 F. Supp.3d 527, 540 (E.D. Pa. 2023) (quoting *Johnson v. City of Phila.*, 105 F.Supp.3d 474, 483 (E.D. Pa. 2015)). Rather, they "provide the 'vehicle through which plaintiffs can recover for . . . conduct that results in death.'" *See id.* (quoting *Johnson*, 105 F.Supp.3d at 483). So, for the purposes of analyzing Defendants'

4

Motions to Dismiss, Debar's Second Amended Complaint rises and falls on her negligence claim.

### A. FESC

To state a claim for negligence under Pennsylvania law, a plaintiff must establish that the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *Morena v. South Hills Health System*, 462 A.2d 680, 684 (Pa. 1983). Only "certain relations between parties may give rise to such a duty." *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa. 1989). "Anglo-American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Id.*

FESC primarily argues that it never owed a duty to Hatt because NADC—Hatt's employer—was an independent contractor. The general rule, according to "century-old" "foundational law" is that "a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees." *Nertavich v. PPL Elec. Utilities*, 100 A.3d 221, 227 (Pa. Super. 2014) (citing *Beil v. Telesis Const., Inc.*, 11 A.3d 456, 466 (Pa. 2011)). The same is true for employers, generally; the employer need not be a landowner to invoke the independent-contractor rule. *Debar*, 2024 WL 5008504, at *3 n.3 (collecting cases).

Debar does not dispute that NADC was an independent contractor, but rather, argues that an exception to the independent-contractor rule applies: the retained-control exception. That

exception provides that "'[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.'" *Beil*, 11 A.3d at 466 (quoting Restatement (Second) of Torts § 414). "A long line of Pennsylvania cases has construed this exception narrowly, almost always finding that the hiring party did not exercise sufficient control over the contractor to impose liability on the hiring party for the contractor's employee's injury." *Warnick v. Home Depot, U.S.A., Inc.*, 516 F. Supp.2d 459, 468-69 (E.D. Pa. 2007) (discussing cases).

A plaintiff may demonstrate that a defendant "retained control" over an independent contractor's actions, only if they either "point to contractual provisions giving the" employer "control over the manner, method, and operative details of the work" or "demonstrate that the" employer "exercised actual control over the work." *Id.* at 467.

In her Response to FESC's Motion to Dismiss, Debar "for the sake of brevity . . . , incorporates the discussion of relevant [Purchase Order] provisions" from her previous Response to FESC's Motion to Dismiss her Amended Complaint. But reliance on prior briefing is not condoned, because it has the capacity to "improperly circumvent[] . . . page limits, unfairly prejudice[] the opposing parties, and tax[] the Court's resources." *Daugherty v. Adams*, 2019 WL 7987859, at *14 (W.D. Pa. Nov. 15, 0219); *see also Masimo Corp. v. Philips Elec. N.A. Corp.*, 62 F. Supp.3d 368, 376 (D. Del. 2014). In any event, it is law of the case that those Purchase Order provisions alone do not establish that FESC retained control of the demolition project such that the independent-contractor rule's bar on liability does not apply. *Debar*, 2024 WL 5008504, at *4 (rejecting Debar's argument that the Purchase Order itself established that FESC retained control over the demolition project because "'retaining a certain degree of

6

authority over safety issues, such as supervising and enforcing safety requirements, and even imposing its own safety requirements at a work site, does not constitute control for purposes of imposing liability'" (quoting *Beil*, 11 A.3d at 469)); *see also Constar, Inc. v. Nat'l Distrib. Ctrs., Inc.*, 101 F. Supp.2d 319, 323 n.2 (E.D. Pa. 2000) ("The law of the case doctrine is an equitable doctrine that provides that a decision on an issue of law made at one stage of the case is binding precedent to be followed in successive stages of litigation.") (citing *Deisler v. McCormack Aggregates Co.*, 54 F.3d 1074, 1087 (3d Cir. 1995).[4]

Nevertheless, Debar maintains that allegations in her Second Amended Complaint warrant a conclusion that FESC "exercised actual control over the work." *Beil*, 11 A.3d at 467. For the reasons set forth below, her argument is unavailing.

She first focuses on paragraphs 65 through 69 of her Second Amended Complaint in which she alleges that "FESC exerted actual control over the Project work by instructing and/or directed NADC where," and "when" to "perform its work," as well as providing the "means, methods, and/or manner in which the demolition work was to be done." However, those are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" to overcome a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Next, in paragraphs 70 through 88, Debar alleges that, through the various documents

---

[4] Even if the issue had not already been decided, FESC notes that a Pennsylvania Superior Court decision, *Nertavich v. PPL Electric Utilities*, concerned a contract between an employer and an independent contractor with substantially similar provisions to the ones at issue here. 100 A.3d at 232. There, the court noted that the contract at issue included a provision stating that the "Contractor shall remain solely responsible for the safe performance of the Work under" the contract. *Id.* at 233. Therefore, because "the contract . . . clearly places responsibility for job site safety upon" the contractor, the contract's provisions could not support a conclusion that the employer retained control over the independent contractor's work. *Id.* So too here. The Purchase Order between FESC and NADC states that NADC shall "conduct the Work in a manner to avoid risk of bodily harm to persons or damage to property," "shall take all necessary safety health precautions, and shall do everything necessary to prevent accidents or injury to persons on, about, or adjacent to the premises where Work is being performed, including using proper safety appliances." For that reason, too, the Purchase Order's provisions do not establish that FESC retained control over NADC such that the independent-contractor rule does not apply.

7

FESC created to govern its relationship with NADC—the Specifications, Safety Manual, and Code of Conduct—and with the help of its Purchaser Representative and Project Manager, FESC required "strict compliance" with the following requirements: (1) that NADC comply with certain unnamed project specifications in how they performed the work; (2) that FESC maintained the right to approve NADC's work; (3) that NADC comply with certain safety conditions; (4) that FESC employees, namely the Purchaser Representative and Project Manager were allowed to be present at the demolition site for oversight; and, (5) that NADC use certain equipment to perform the work.

As for the first allegation, requiring NADC to comply with "plans and specifications" for the project, set out in the initial Purchase Order, does not trigger the retained control exception. *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1063 (Pa. Commw. 2005) (quoting *Hader v. Coplay Cement Mfg. Co.*, 189 A.2d 271, 278-79 (Pa. 1963)).  Second, retaining the right to approve of NADC's work cannot trigger the retained-control exception; the employer's "right of control must go beyond a general right to order, inspect, make suggestions, or prescribe alterations or deviations." *Beil*, 11 A.3d at 466.  The same is true for requiring compliance with safety minimums. *Farabaugh v. Pennsylvania Turnpike Com'n*, 911 A.2d 1264, 1275 (Pa. 2006) (holding that "[s]ound public policy . . . dictates that [a landowner] monitor the safety of its . . . construction projects").  Inspection and oversight rights, too, do not trigger the retained-control exception. *Nertavich*, 100 A.3d at 233-34 (holding that inspection rights and observation by "contract field representatives" were insufficient to establish that the employer retained actual control of the work).  And finally, even when the employer requires that the contractor use specific equipment, the retained-control exception still requires something more to impose liability on the employer. *Main v. Columbia Gas Co. of Pa.*, 2019 WL 4273896, at *5-6 (Pa.

Super. Sept. 9, 2019) (holding that employer requiring that contractor "use a certain type of weld" did not trigger the retained-control exception).

In sum, none of the allegations in the Second Amended Complaint plausibly allege that FESC retained control of NADC's work. Therefore, Debar has failed to trigger the retained-control exception, and FESC's Motion to Dismiss shall be granted. As this is Debar's third attempt to plead that FESC retained actual control over NADC's work, and she has failed to do so, further amendment would be "futile," so the dismissal as to FESC shall be with prejudice. *See Budhun v. Reading Hosp. and Medical Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

### B. FEC

As for stating a claim against FEC, Debar primarily argues that FESC hired NADC as an agent of FEC, and therefore, FEC is vicariously liable for FESC's negligence. In support of that argument, Debar points to the Purchase Order's language that FESC hired NADC "on its own behalf and on behalf of its affiliates." Debar also highlights that the Purchase Order defines the term "Agent" to mean FESC as an agent of "Purchaser," but that "Purchaser," is defined as FESC, too. According to Debar, the ambiguities created by the Purchase Order require the Court to assume that FEC is one of FESC's affiliates. As she sees it, FESC is one of FEC's agents, and principals are liable for the torts of their agent, *McLaughlin v. Nahata*, 298 A.3d 384, 396 (Pa. 2023), so FEC is liable for FESC's negligence.

But as FEC points out, even if FESC was acting as one of its agents, FEC is a holding company, with FESC being one of its subsidiaries.[5] And the "'general principle of corporate law

---

[5] Debar briefly argues that "the relationship between FESC and FEC is certainly in dispute." But in its Motion, FEC cites to "SEC filings,"—FEC's 10K filings—which were attached to FESC's Notice of Removal (which constitute "public record[s] of which the court can take judicial notice"). *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Those filings show that FESC is a subsidiary of FEC, the parent holding company.

9

deeply ingrained in our economic and legal systems is that a parent corporation (so-called because of control through ownership of another corporation's stock)," here, the holding company, FEC, "is not liable for the acts of its subsidiaries,'" here, FESC. *Brown v. End Zone, Inc.*, 259 A.3d 473, 489 (Pa. Super. 2021) (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)). "Pennsylvania . . . does not allow recovery" from a parent corporation like FEC "unless the party seeking" such recovery asks the court to "pierce the corporate veil." *Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir. 1990) (per curiam). "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (citing *Wedner v. Unemployment Board*, 296 A.2d 792, 794 (Pa. 1972)). And when a plaintiff seeks to hold a parent company liable by piercing the corporate veil, a court may dismiss the plaintiff's claim if the complaint "provide[s] little or nothing in the way of factual allegations to support their contention that liability should be imposed." *Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co.*, 700 F. Supp.2d 720, 737 (W.D. Pa. 2010). This structure holds regardless of whether the subsidiary was acting as the parent company's agent in negotiating and executing a contract. *See Rice v. First Energy Corp.*, 339 F. Supp.3d 523, 534-36 (W.D. Pa. 2018).

"[S]everal factors such as 'undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetuate a fraud'" inform a court's evaluation of whether to pierce the corporate veil. *Brown*, 259 A.3d at 490 (quoting *Advanced Tel. Sys., Inc. v. Com-Net Pro. Mobile Radio, LLC*, 846 A.2d 1264, 1277-78 (Pa. Super. 2004)). Further, the veiled may be pierced under an "alter ego" theory, "which applies 'where the individual or corporate owner controls the corporation to be pierced, and the controlling owner is to be held liable.'" *Id.* (quoting *S.T. Hudson Eng'rs, Inc. v.*

*Camden Hotel Dev. Assocs.*, 747 A.2d 931, 935-36 (Pa. 2000)). To allege an alter ego theory, a plaintiff must allege facts demonstrating "(1) that the party [or parent corporation] exercised domination and control over corporation [to be pierced]; and (2) that injustice will result if [the] corporate fiction is maintained despite unity of interests between [the] corporation and its principal." *Allegheny Energy Supply Co. LLC v. Wolf Run Min. Co.*, 53 A.3d 53, 58 n.7 (Pa. Super. 2012). For this exception to the general bar on piercing the corporate veil to apply, the plaintiff must allege facts "demonstrat[ing] that: 'the subsidiary is the 'alter ego' of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corporation may be held to be doing business within the state under the facade of the subsidiary.'" *Id.* (quoting *Botwinick v. Credit Exch., Inc.*, 213 A.2d 349, 353-54 (Pa. 1965)).

      Although Debar baldly asserts that "[a]t all relevant times," FEC "was acting by and through its agents," and that "at all relevant times hereto," the FirstEnergy Defendants "operated as the same business entity, under each other's control," these conclusory allegations need not be accepted as true. *Iqbal*, 556 U.S. at 678. And the Second Amended Complaint is devoid of any factual support for such a conclusion—indeed, Debar does not allege anything about FEC other than those conclusions. There is nothing that addresses the multiple factors which could justify piercing the veil.

      Nevertheless, Debar argues that, because the Purchase Order listed the buyer as having an FEC email address, and because NADC was to submit invoices to an FEC email account, such facts—although not pleaded in her Second Amended Complaint but included in the Purchase Order she attached to it—establish the necessary prerequisites for the court to pierce the veil and allow her claim against FEC to go forward. But Debar provides no citation to support its

11

position.  Indeed, at least one other federal court, interpreting Pennsylvania law, has rejected precisely Debar's argument, even as it applies to FEC and its subsidiaries.  *See, e.g.*, *Rice*, 339 F. Supp.3d at 538 n.9 ("[T]he use of same email address, i.e., "@firstenergycorp.com" by the employees of the parent corporation and its subsidiaries does not show that FEC exercises greater than normal control over its subsidiaries" such that a Court may pierce the corporate veil).

Because Debar has failed to allege any facts justifying piercing the corporate veil to allow her to recover from FEC, FEC's Motion to Dismiss shall be granted.  And because Debar's only theory for holding FEC liable is a vicarious liability theory predicated on FESC's negligence, and her claims against FESC shall be dismissed with prejudice, any claim against FEC will be futile, so her claims against FEC shall be dismissed with prejudice, too.  *Budhun*, 765 F.3d at 259.

### C.  AESC

Debar also seeks to hold AESC liable under the retained-control exception and under a theory of vicarious liability.  But Debar's pleadings contain even fewer allegations about AESC than it does regarding FESC and FEC.  Simply put, it is devoid of factual allegations that would support her theory that AESC retained control of NADC's work or that it could be vicariously liable for any of FESC's purported negligence.

Debar presents one legal theory unique to AESC: to wit, that AESC owed Hatt a duty by virtue of owning the Power Station, a fact that AESC acknowledges.  As articulated in the Court's previous opinion:

> One such relationship that may give rise to . . . a duty [for purposes of tort liability] is that between landowners, possessors of land, or property owners—terms which are used interchangeably by Pennsylvania courts, *see, e.g., Farabaugh v. Pennsylvania Turnpike Comm'n*, 911 A.2d

12

> 1264, 1270-74 (Pa. 2006)—and those who enter their land or property, *see id*. The duty that a landowner owes an entrant depends on the purpose for which the individual enters the landowner's property. *Jones v. Three Rivers Mgmt. Corp.*, 394 A.2d 546, 552 (Pa. 1978). Those who enter "for a purpose directly or indirectly connected with business dealings" are considered "business invitees." *Gutteridge v. A.P. Green Servs., Inc.*, 804 A.2d 643, 655-56 (Pa. Super. 2002).
>
> "The duty of care" that a landowner owes "to a business invitee . . . is the highest duty owed to any entrant upon land." *Id.* at 656 (quoting *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. 1998)). "The landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care." *Id.* (quoting *Emge*, 712 A.2d at 317). A "possessor of land must use 'reasonable care to make the premises safe or give adequate and timely warnings of dangers known to him but not known to the contractor or his employees.'" *Farabaugh*, 911 A.2d at 1273 (quoting *Crane v. I.T.E. Cir. Breaker Co.*, 278 A.2d 362, 364 (Pa. 1971)).

Debar, 2024 WL 5008504, at *3. So, if that were end of the story, AESC would seem to owe NADC, and by extension, Hatt, a duty of care, seeing as he was a business invitee entering AESC's property.

AESC, however, argues that the danger to Hatt would have been "obvious" to him, and that therefore, AESC did not have a duty to Hatt that would give rise to a negligence claim. That is so because the "law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee." *Mike v. Lebanon Miridites League*, 218 A.2d 814, 815 (Pa. 1966). "By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself." *Carrender v. Fitterer*, 469 A.2d 120, 125 (Pa. 1983) (citing *Joyce v. Quinn*, 205 A.2d 611, 613 (Pa. Super. 1964); *Smith v. Seven Springs Farms, Inc.*, 716 F.2d 1002 (3d Cir. 1983)).

But, counters Debar, "the question of whether a danger was known or obvious is usually

13

a question of fact for the jury," so it would be inappropriate to determine that the danger to Hatt was open and obvious, such that AESC's Motion to Dismiss ought to be granted. *Id.* at 124. Nevertheless, when "reasonable minds could not differ as to the conclusion" that a danger was open and obvious to the plaintiff, "the question may be decided by the court." *Id.*

Just so here; "'reasonable minds could not differ as to the conclusion'" that performing demolition work on a catwalk one hundred feet in the air—tragic as the consequences may be—"presents a potential condition that is both open and obvious." *Larose v. Berish*, 2025 WL 325999, at *4 (Pa. Super. Jan. 25, 2025) (quoting *Carrender*, 469 A.2d at 124) (affirming trial court's dismissal of a complaint seeking to hold the landowner liable for negligence when the plaintiff fell from a ladder while performing roofing work). That "is especially true as to Plaintiff, a person contracted to perform" demolition "work whose task at the" Power Station "necessarily entailed utilizing a" catwalk "to perform his duties." *See id.* (citing *Palezncar v. Michael J. Bobb, Inc.*, 266 A.2d 478, 481 (Pa. 1970)).

Debar does not provide any factual allegations that might counsel a different conclusion. She does, however, argue that there are factual disputes as to "the precise nature of the danger that ultimately caused" Hatt's death. The Court takes her argument to be that, based on facts alleged, it is unclear why the catwalk upon which Hatt stood failed. But Debar does not allege any facts that would link the creation, installation or maintenance of the catwalk to AESC—so even if Debar did allege a fact that would elucidate how the catwalk fell, it would not necessarily be AESC on the hook for said negligence. *Warnick*, 516 F. Supp.2d at 466 ("The landowner does not owe a duty to the contractor's employee if the defective conditions of the land are the products of the contractor's work.").

Because Debar has failed to allege facts that plausibly state a claim against AESC, its

Motion to Dismiss shall be granted.  But because this is AESC's first Motion to Dismiss, amendment may not yet be futile, so her claims against AESC shall be dismissed without prejudice.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (Federal Rules require that "leave [to amend] shall be freely given when justice so requires") (citing Fed. R. Civ. P. 15(a)).

    An appropriate order follows.

                  **BY THE COURT:**

                  **S/ WENDY BEETLESTONE**

                  _____
                  **WENDY BEETLESTONE, J.**